UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RICARDO RODRIGUEZ,

        Petitioner,

        -against-

VINCENT DEMARCO,
        Sherriff of Suffolk County,

        Respondent.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
15-cv-3963(ADS)

**APPEARANCES:**

**Christopher J. Cassar P.C.**
*Attorney for the Petitioner*
13 East Carver Street
Huntington, NY 11743

**Suffolk County District Attorney's Office**
*Attorney for the Respondent*
200 Center Drive
Riverhead, NY 11901
      By: Grazia R. DiVincenzo, Assistant District Attorney

**SPATT, District Judge.**

On July 7, 2015, the Court issued an order directing the Respondent Vincent Demarco, the Sheriff of Suffolk County (the "Respondent"), to appear before this Court to show cause as to why a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 should not be granted and the Petitioner Ricardo Rodriquez (the "Petitioner") released from the Riverhead County Jail, where he is being detained pending his deportation.

On July 22, 2015, this Court vacated the July 7, 2015 order to show cause in light of a declaration filed by Suffolk County District Attorney's Office ("Suffolk County"), counsel for

1

the Respondent, which offered legal and statutory authority for why the Petitioner's claims were procedurally improper and without merit. The Court then gave the Petitioner an opportunity to respond to the arguments advanced by Suffolk County in favor of dismissing this action.

On July 27, 2015, the Petitioner filed its response to the Respondent's objections.

For the reasons set forth below, the Court dismisses the Petitioner's claims.

### I. BACKGROUND

On July 10, 2012, the Petitioner, who is not a United States citizen, pled guilty to a misdemeanor sexual misconduct charge in the County Court of Suffolk County and, pursuant to a negotiated plea agreement, received a sentence of six years of probation.

The Petitioner alleges that prior to accepting his guilty plea, he was advised by the Court: "No one can make any promises to you as to what effect [this] plea of guilty will have on you[r] status here[.]" (Rodriguez Reply Decl. at ¶ 27.) In addition, at the plea proceeding, the Petitioner confirmed that he signed **a** waiver of his right to appeal his conviction, which contained the following statement:

> I have been advised and understand that, if I am not a U.S. citizen, my plea of guilty may have an effect upon my immigration status, including a likelihood or certainty of deportation, which has been explained to me by my attorney, and that I am secure in this knowledge at the time of my guilty plea.

(Divincenzo Decl. at ¶ 5.)

On January 14, 2014, the Petitioner filed a motion in the Suffolk County Court to vacate his conviction, arguing that his attorney failed to properly advise him of the potential immigration consequences resulting from pleading guilty to misdemeanor sexual misconduct. On March 12, 2014, the court denied his motion. (Id. at ¶ 9.)

On May 21, 2014, the United States Department of Homeland Security ("DOH") commenced deportation proceedings against the Petitioner by serving a Notice to Appear

("NTA") directing him to appear before an Immigration Judge ("IJ"). The NTA alleged that he was subject to deportation under the Immigration and Nationality Act, 8 U.S.C. § 1182 (the "Immigration and Nationality Act") because (1) he is an "alien present in the United States without being admitted or paroled"; and (2) that his conviction for sexual misconduct constitutes a crime of "moral turpitude," which makes him subject to deportation. (Rodriquez Decl., Ex. C.)

On August 21, 2014, the Appellate Division, Second Department, granted his motion for review of the decision by the Suffolk County Court denying his motion to vacate his conviction. That appeal is currently pending. (Divincenzo Decl. at ¶ 10.)

On July 9, 2014, the Attorney General detained the Petitioner pending a decision by the IJ with regard to his deportation. (Rodriquez Decl., Ex. C, at 3.)

On July 22, 2014, the Petitioner appeared before IJ Alan L. Page for an initial hearing. (Rodgriguez Decl., Ex. A, at 1.) On September 17, 2014, IJ Page held a hearing during which the Petitioner admitted that he was subject to deportation under the Immigration and Nationality Act because of his status as an illegal alien. (Rodriquez Decl., Ex. C, at 1–2.) However, he sought a continuance of his deportation on the ground that he intended to apply for asylum. (Id.)

From September 17, 2014 to January 5, 2015, the Petitioner requested multiple adjournments of his deportation to prepare his asylum application. (Id. at 2–3.) Finally, on January 5, 2015, IJ Page held a hearing during which the Petitioner indicated that he was withdrawing his application for asylum and seeking a further continuance to pursue a motion in the Appellate Division to vacate his conviction. (Id. at 3.) IJ Page denied the Petitioner's request for an additional continuance because he found that even if the Petitioner's criminal appeal was successful, he was still subject to deportation because of his status as an illegal alien. As such, IJ Page ordered that the Petitioner be deported to El Salvador. (Id. at 5.)

On April 21, 2015, the Board of Immigration Appeals ("BIA") affirmed the decision by IJ Page ordering the Petitioner's deportation.

On May 14, 2015, in the Second Circuit, the Petitioner filed a petition for review and an emergency stay of his deportation.

On July 7, 2015, the Petitioner filed a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in this Court seeking an order (1) directing the Respondent to release the Petitioner from immigration custody based on his alleged prolonged detention by the Attorney General in violation of the Due Process clause of the Fifth Amendment; and (2) vacating his state court conviction on the basis of ineffective assistance of counsel. (Rodriguez Decl. at ¶ 16.)

The Court, in turn, will address each claim

## II. DISCUSSION

**A. The Challenge by the Petitioner to His Continued Immigration Detention**

As noted, the Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 based on his assertion that his continued detention by the Attorney General violates his Due Process rights under the Fifth Amendment.

28 U.S.C. § 2241(a) authorizes "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions," to grant a writ of habeas corpus to a "prisoner . . . in custody in violation of the Constitution or laws or treaties of the United States[.]"

During the pendency of removal proceedings, the propriety of the Attorney General's custody over an illegal alien is governed by 8 U.S.C. § 1226(c)(1)(A), which provides that the "Attorney General shall take into custody any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title[.]" Section 1182(a)(2), in turn,

provides that an alien is inadmissible if he has been convicted of a "crime involving moral turpitude."

During this period, "Section 1226(c)(2) does grant DHS authority to 'release an alien described in paragraph (c)(1),' but only in certain limited circumstances related to the protection of witnesses in criminal cases." Young v. Aviles, No. 14-CV-9531 (JMF), 2015 WL 1402311, at *2 (S.D.N.Y. Mar. 26, 2015) (quoting 8 U.S.C. § 1226(c)(2)).

After an alien is ordered removed, the Attorney General's detention authority is governed by 8 U.S.C. § 1231, which provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."

Under Section 1231(B), the 90 day removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C.A. § 1231 (West).

The statute also authorizes the Attorney General to continue detention of criminal aliens beyond the expiration of the 90 day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6).

In Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), the United States Supreme Court found that the Due Process clause of the Fifth Amendment limited the power of the Attorney General to continue to detain criminal aliens following the ninety day removal period. In that regard, the Court held that detention of an alien after the entry of an administratively final order of deportation or removal is only authorized for a period "reasonably necessary to secure removal[.]" Id. at 2494, 150 L. Ed. 2d 653. Under this standard, the Court

found that a period of six months is "presumptively reasonable" for Due Process purposes. Id. at 2505, 150 L. Ed. 2d 653. After the six month period ends, to gain his or her release, the alien must show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. To keep the alien in custody, the Attorney General must "respond with evidence sufficient to rebut that showing." Id.

Relying on Davis, the Petitioner asserts that his continued detention by the Attorney General pending his deportation violates the Fifth Amendment. The Court finds the argument by the Petitioner to be without merit.

"In the context of a deportation proceeding, a petitioner's right to habeas relief depends, in part, on the stage of the deportation process at the time he files a habeas petition." Monestime v. Reilly, 704 F. Supp. 2d 453, 457 (S.D.N.Y. 2010). As noted above, where, as here, an alien is detained after the entry of an administratively final order of deportation or removal, 8 U.S.C. § 1231 governs the question of whether his continued detention is warranted. Under that statute, the Attorney General is required to accomplish an alien's removal within 90 days commencing on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). Pursuant to federal regulation, an order of removal becomes "administratively final" "[u]pon dismissal of an appeal by the Board of Immigration Appeals[.]" 8 C.F.R. § 1241.1.

Here, on April 21, 2015, the BIA affirmed the decision by IJ Page ordering the Petitioner's removal. Thus, under the provisions of 8 U.S.C. § 1231(a)(1), the Attorney General had 90 days from April 21, 2015 to remove the Petitioner, after which the Petitioner could seek his release by showing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Davis, 533 U.S. at 699–700, 150 L. Ed. 2d 653.

However, on May 14, 2015, prior to the expiration of the 90 day removal period, the Petitioner filed a petition for review and an emergency stay of his deportation in the Second Circuit. Numerous courts in this Circuit have held that "the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a 'forbearance policy' recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. Newell v. Holder, 983 F. Supp. 2d 241, 246-47 (W.D.N.Y. 2013); see also Efstathiadis v. Holder, 752 F.3d 591, 599 n. 5 (2d Cir. 2014) certified question answered, 317 Conn. 482 (2015) ("While a petition is pending in this Court, the Government's forbearance policy assures that the filing of a motion to stay removal, as has been done here, will suffice to prevent removal."); In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit, 702 F.3d 160, 162 (2d Cir. 2012) ("While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur.").

The Petitioner does not cite any legal authority suggesting that he is entitled to his release on Due Process grounds pending the decision by the Second Circuit with regard to his petition for an emergency stay of his removal. Indeed, quite the opposite appears to be true.

As noted above, under Davis, the Petitioner's continued detention violates Due Process only to the extent "that there is no significant likelihood of removal in the reasonably foreseeable future." Davis, 533 U.S. at 699–700, 150 L. Ed. 2d 653. Detention during an appellate stay of removal pursuant to a forbearance policy is "reasonably foreseeable" because there is an end point — namely a decision by the Second Circuit on his petition. Therefore, the continued detention of the Petitioner during the pendency of his appeal is entirely permissible under the

Due Process standards set forth in Davis. See Demore v. Kim, 538 U.S. 510, 531, 123 S. Ct. 1708, 1721-22, 155 L. Ed. 2d 724 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir. 2006) ("Lawrence's continued detention here occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order; it is beyond dispute that this period of time was necessary to bring about Lawrence's removal, which-now that the current litigation is resolved-is presumably imminent. A remand on the issue of the length of detention . . . would be wholly fruitless."); Flores v. Holder, 977 F. Supp. 2d 243, 249 (W.D.N.Y. 2013) ("Detention during an appellate stay of removal, whether formal or in accordance with the Second Circuit forbearance policy, is not indefinite because the end of the litigation provides a definite end point.").

Therefore, the decision by the Petitioner to file a petition for review and an emergency stay of his deportation in the Second Circuit triggered the forbearance policy under which the DHS could not remove him pending the decision by the Second Circuit on his petition. As such, his continued detention is entirely of his own making and cannot be found to be a violation of his Fifth Amendment Due Process rights. See, e.g., Abimbola v. Ridge, 181 F. App'x 97, 99 (2d Cir. 2006) (summary order) ("[S]ince the filing of this appeal in June 2005, Abimbola has filed two other actions in this Court alone, and filed motions to stay his removal, which trigger the application of this Court's forbearance policy. As the District Court noted, a self-inflicted wound should not establish grounds for Abimbola's [Due Process] claim."); Campbell v. Tryon, No. 14-CV-0315 (JTC), 2014 WL 3809747, at *6 (W.D.N.Y. Aug. 1, 2014) ("Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his

8

detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment."); Newell v. Holder, 983 F. Supp. 2d 241, 247 (W.D.N.Y. 2013) (same).

Accordingly, the Court finds the Petitioner's claim that he should be granted habeas relief based on the length of his detention to be without merit.

**B. The Challenge by the Petitioner to His State Court Conviction**

The Petitioner also seeks an order vacating his state court conviction for sexual misconduct because he claims that he was "denied effective assistance of counsel when he was not advised prior to entering a plea of guilty that his conviction 'would result in his removal from this country.'" (Rodriguez Reply Decl. at ¶ 16.)

He brings his request for relief under the provision of 28 U.S.C. § 2241, which as noted above, authorizes "the district courts . . . within their respective jurisdictions" to grant a writ of habeas corpus to a "prisoner . . . in custody in violation of the Constitution or laws or treaties of the United States[.]" The Court finds the Petitioner's claim to vacate his state court conviction to be problematic for a number of reasons.

Initially, the Court notes that the Petitioner does not challenge his state court conviction under the correct statute. 28 U.S.C. § 2254(a) states: "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Where, as here, a habeas petition seeks to vacate a state court conviction, the petition should be brought under section 2254, not section 2241. See, e.g., Lage v. Chapdelaine, No. 3:10-CV-1030 (JCH), 2010 WL 4688820, at *1 (D. Conn. Nov. 10, 2010) (construing a petitioner's application for writ of habeas corpus from immigration custody as one under 2254,

9

not 2241, because his application sought to challenge his state court conviction); see also Cabrera v. New York, No. 03 CIV.4692(LTS)(FM), 2004 WL 759309, at *2 (S.D.N.Y. Mar. 30, 2004) ("Because he is currently being held at the Federal Detention Center in Oakdale, Louisiana, on a Bureau of Immigration and Customs Enforcement detainer, Cabrera has styled his petition as being brought under both Sections 2241 and 2254 . . . . It is clear from the face of the petition, however, that Cabrera is challenging his state court conviction, one consequence of which is his continued federal detention. Accordingly, the petition is properly treated as arising under 28 U.S.C. § 2254.").

Therefore, the Court will construe the Petitioner's challenge to his state court conviction as a claim under section 2254, not section 2241. See Cook v. New York State Div. of Parole, 321 F.3d 274, 277 (2d Cir. 2003) ("If an application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under section 2241, the district court must treat it as a section 2254 application instead.") (citing James v. Walsh, 308 F.3d 162, 166 (2d Cir. 2002)).

Construed properly as a challenge to his state court conviction under 28 U.S.C. § 2254, it is clear that the Court lacks the subject matter jurisdiction to provide the Petitioner with his requested relief.

The Court finds Ogunwomoju v. United States, 512 F.3d 69 (2d Cir. 2008) to be instructive. In that case, the petitioner was convicted on drug possession charges and sentenced to "time served" and a six-month license suspension. Id. at 74. Subsequently, DHS filed multiple charges of removability against him under the Immigration and Nationality Act based on that conviction along with several other prior convictions for petit larceny and conspiracy to commit credit card fraud. Id. at 71. An IJ later determined that he was subject to removal, which the BIA affirmed. Id. at 72. The petitioner sought judicial review of the order of removal

in the Third Circuit and review of his state court conviction in the New York state courts. Id. Subsequently, the petitioner filed a writ with a federal district court seeking habeas relief pursuant to 28 U.S.C. § 2254. Id.

The Second Circuit in Ogunwomoju affirmed the decision by the district court dismissing the habeas petition. Id. at 74. In so holding, the court first noted that under the plain terms of section 2254, "[i]n order for a District Court to entertain a petition for habeas relief, the application for relief must be made 'in behalf of a person in custody pursuant to the judgment of a State court[.]" Id. at 73 (quoting 28 U.S.C. § 2254(a)). Based on its reading of this language, the court found that although the petitioner was in immigration custody at the time of filing the petition, he was not "in custody" for purposes of section 2254. Id. That is because: "[r]emoval proceedings are at best a collateral consequence of conviction," and "'that once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purpose of a habeas attack upon it.'" Id. at 75 (quoting Maleng v. Cook, 490 U.S. 488, 492, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989)).

Therefore, the Second Circuit concluded that the district court was correct in finding that it lacked jurisdiction to entertain the petitioner's claim because he was not "in custody under a state conviction or sentence when [he] file[d] for habeas relief." Id.

Here, the Petitioner received a sentence of probation as a result of his July 10, 2012 decision to plead guilty to a misdemeanor sexual misconduct charge. Thus, he was never placed in custody as a direct result of this conviction. Although the Petitioner was subsequently detained by DHS, "that immigration detention is not 'custody' for the purposes of establishing jurisdiction to consider habeas petitions challenging a state court conviction pursuant to 28

U.S.C. § 2254," even where the immigration detention or order or removal is a direct consequence of the state conviction being challenged. Ogunwomoju, 512 F.3d at 69. The fact that the Petitioner was initially arrested and placed into detention by DHS in part on a charge related to his 2012 conviction does not change this result. See id.

Here, the Court finds that the Petitioner fails to satisfy the "in custody" requirement of section 2254(a). Therefore, the court lacks jurisdiction to entertain a challenge to the petitioner's state court conviction. See, e.g., Vega v. Schneiderman, No. 12 CIV. 6994 (PGG) (KNF), 2014 WL 1100208, at *5 (S.D.N.Y. Feb. 24, 2014) ("Since Vega was no longer in custody after her sentence expired on September 20, 2011, and she filed the instant petition in September 2012, she does not meet the jurisdictional requirement that she be 'in custody' at the time of filing the petition."); Owuor v. Viator ex rel. New York, No. 12-CV-4338 (KAM), 2012 WL 3930554, at *2 (E.D.N.Y. Sept. 10, 2012) ("Here, petitioner filed the Petition challenging the 2004 Conviction when he was no longer 'in custody' pursuant to that conviction but rather was in ICE custody due to an order of removal . . . . Accordingly, because petitioner fails to satisfy the 'in custody' requirement of Section 2254(a), this court lacks jurisdiction over the Petition and it is therefore dismissed.").

In sum, the Court finds that the Petitioner's claim for habeas relief based on her alleged prolonged detention lacks merit and also, the Court lacks jurisdiction to entertain a challenge to his state court conviction. Therefore, the petition is dismissed in its entirety.

### III. CONCLUSION

For the foregoing reasons, the petition for habeas relief is dismissed. The Clerk of the Court is directed to close this case.

**SO ORDERED**
Dated: Central Islip, New York
August 8, 2015

                                            */s/ Arthur D. Spatt*
                                            ARTHUR D. SPATT
                                        United States District Judge